UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LOYD DONALD OSBORNE,

               Petitioner,                      Case No. 1:19-cv-600

v.                                       Honorable Janet T. Neff

MATT MACAULEY,

               Respondent.

_____/

## OPINION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>**Discussion**</u>

## I.   Factual allegations

Petitioner Loyd Donald Osborne is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan.  Following a one-day jury trial in the Eaton County Circuit Court, Petitioner was convicted of operating a motor vehicle while intoxicated-third offense in violation of Mich. Comp. Laws § 257.625 and resisting or obstructing a police officer in violation of Mich. Comp. Laws § 750.81(d).  On January 5, 2017, the court sentenced Petitioner, as a habitual offender-fourth offense, Mich. Comp. Laws § 769.12, to concurrent prison terms of 11 to 25 years for operating while intoxicated and 5 to 15 years for resisting and obstructing a police officer.

On July 22, 2019, Petitioner filed his habeas corpus petition raising seven grounds for relief, as follows:

I.    Trial court erred in denying motion to suppress blood alcohol evidence.

II.    Defendant's OWI 3rd conviction must be vacated because the evidence is insufficient to find that he had operated a vehicle under the influence of alcohol.

III.    Defendant's resisting and obstructing a police officer conviction must be vacated the evidence is insufficient to find the officer gave a lawful order.

IV.    Defendant is entitled to resentencing because his minimum term was an unreasonable and disproportionate sentence.

V.    Petitioner had ineffective assistance of counsel when Attorney Havis advised Defendant to waive Prelim. Examination so that he [could] be accepted into drug program.

VI.    Defendant had ineffective counsel when Attorney Havis conducted critical stages of the proceedings without Defendant being present.

VII.    Defendant had ineffective counsel when Attorney Havis only gave [the] prosecutor the opportunity to arraign him on 3-16-16 and serve him with a notice of enhancement on 3-23-16 which Defendant had no knowledge nor was he present.

(Pet., ECF No. 1, PageID.5, 7-8, 10, 17-20.)

The Michigan Court of Appeals summarized the facts underlying Petitioner's prosecution as follows:

> At trial, eyewitness testimony established that on January 29, 2016, at around 11:00 p.m., defendant was driving erratically in the parking lot of his apartment complex. A fellow resident called the police after she heard the sound of squealing tires and observed defendant strike either a pole or tree, circle around in "donuts," and drive in and out of parking spaces. The witness observed defendant get out of his vehicle and exhibit signs of extreme intoxication before he reentered his vehicle and continued to drive.
>
> Upon his arrival, Sheriff's Deputy Nicklaus Newton observed a vehicle parked out of place, which fit the description he received when dispatched. Defendant's vehicle was "parked half on the sidewalk, in the fire lane, half in the parking lot" with what appeared to be fresh damage on the front driver's side bumper. Newton performed a data search of defendant's vehicle license plate, and continued his investigation by following leads from bystanders directing him toward defendant's apartment. When Newton encountered defendant, he noted that defendant matched the description of the person at issue that he had received when he was dispatched, and he observed defendant's bloodshot and glassy eyes, slurred speech, unsteady stance, and the odor of alcohol on defendant's breath.
>
> Newton testified that defendant admitted to driving "approximately 30 minutes" prior to their encounter, admitted to consuming "two to three beers," and identified the vehicle as his. At some point, defendant walked outside to the parking lot with Newton, at which point Newton observed defendant's unsteady walk. After defendant refused Newton's request to participate in a field sobriety test and a breathalyzer test, Newton placed defendant under arrest, and defendant began resisting. Once defendant was secured, Newton obtained a search warrant and then a blood draw, which revealed that defendant's blood alcohol level was .233 grams per 100 milliliters of blood.

*People v. Osborne*, No. 336716, 2018 WL 2422336, at *1 (Mich. Ct. App. May 29, 2018). On the strength of this evidence, the jury convicted Petitioner and the trial court sentenced him as described above.

Petitioner appealed his convictions and sentences. In the brief Petitioner filed with the assistance of counsel, Petitioner raised four issues—the same issues identified as habeas issues I-IV above. Petitioner also filed a *pro per* brief raising three additional issues—the same issues

identified as habeas issues V-VII above. By opinion issued May 29, 2018, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed his convictions and sentences.

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same issues he raised in the court of appeals. (Pet., ECF No. 1, PageID.3.) By order entered February 4, 2019, the supreme court denied leave to appeal because the justices were "not persuaded that the questions presented should be reviewed by [the] Court." *People v. Osborne*, 922 N.W.2d 128 (Mich. 2019).

Petitioner then filed a motion for relief from judgment in the trial court raising several new issues. The trial court denied relief by order entered May 29, 2019. (Eaton Cty. Cir. Ct. Order, ECF No. 1-1, PageID.25-27.) Petitioner has not appealed the trial court's order because he "has voluntarily and knowingly abandoned those issues . . . ." (Pet., ECF No. 1, PageID.12.) Instead, Petitioner filed his petition raising the same seven issues he raised on his direct appeal.

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

4

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v Rodgers*, 569 U.S. 58, 64 (2013); *Parker v Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III. Suppression of the Blood Alcohol Evidence

Petitioner moved to suppress the blood alcohol evidence, claiming that Deputy Newton did not have probable cause to arrest Petitioner and the search warrant authorizing the blood draw was not supported by probable cause. The trial court and the court of appeals disagreed.

Petitioner's illegal search claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in

the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that provides a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a means to raise Fourth Amendment challenges.

To satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts indicating that the state's mechanism has broken down. Indeed, it is clear that the Michigan courts gave Petitioner's claim full and proper consideration. Petitioner's trial counsel moved to suppress the evidence in the trial court. His motion was denied. The court of appeals addressed Petitioner's Fourth Amendment claims and concluded the claims had no merit. *Osborne*, 2018 WL 2422336, at *1-*3. The Michigan Supreme Court then determined that Petitioner's Fourth Amendment issues were not worthy of further review. *Osborne*, 922 N.W.2d at 128.

Even if this Court were to disagree with the determinations of the Michigan courts, that disagreement would be insufficient to demonstrate a break-down in the state court's corrective mechanisms. *Gilbert*, 763 F.2d at 824. Accordingly, because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claims of illegal search and arrest are barred on habeas review.

### IV. Sufficiency of the Evidence Regarding OWI

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The court of appeals reviewed the sufficiency of the evidence under the following standard:

> In a criminal case, the test for sufficiency of the evidence is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecutor, could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Nowa[c]k*, 462 Mich. 392, 399; 614 N.W.2d 78 (2000); *People v. Reese*, 491 Mich. 127, 139; 815 N.W.2d 85 (2012). The Court should not interfere with the factfinder's role of determining the weight of evidence or the credibility of witnesses. *People v. Eisen*, 296 Mich. App. 326, 331; 820 N.W.2d 229 (2012).

*Osborne*, 2018 WL 2422336, at *3. Although the court of appeals cites only state authorities as the source for the standard, the standard is functionally identical to the standard set forth in *Jackson v. Virginia*. Indeed, the state court authorities cited ultimately rely on *Jackson. See, e.g., People v. Nowack,* 614 N.W.2d 78, 81 (Mich. 2000) (citing *Jackson*).

The appellate court applied the standard exactly as *Jackson* directs: the court identified the elements of the offense, viewed the evidence in a light favorable to the prosecution, and drew reasonable inferences in the same light. The court of appeals identified the elements the prosecutor was required to establish: "that defendant operated his vehicle in . . . 'a place open to

the general public[']... and that he was intoxicated while operating ...." *Osborne*, 2018 WL

2422336, at *4. Petitioner does not take issue with the sufficiency of the evidence that he operated

his vehicle in a public place, nor does he take issue with the sufficiency of the evidence that he

was intoxicated. Instead, he contends that there was not sufficient evidence that the operating and

the intoxication occurred at the same time.

The Michigan Court of Appeals, however, found that there was sufficient evidence

for the jury to reasonably infer that the two elements occurred simultaneously:

> A witness testified that she had a clear view of the parking lot while she was on her
> balcony, and that she observed defendant strike a pole with his vehicle while he
> was "[d]oing donuts," driving in reverse "extremely fast," and pulling in and out of
> parking spots. She recounted that when defendant got out of his vehicle, he "could
> barely walk, could barely make it to the mailboxes," that "he walked in a full circle
> to get to the mailbox," and was not walking in a straight line. She further indicated
> that she observed defendant begin operating the vehicle again before she called 911.
> Newton's testimony likewise indicates that defendant was intoxicated while he was
> driving. His testimony at trial indicated that defendant "said he was driving a
> vehicle approximately 30 minutes before I made contact with him," and that
> defendant admitted to consuming alcohol. Moreover, Newton made several
> observations of intoxication symptoms when he encountered defendant, and the
> jury heard expert testimony that defendant's blood alcohol level after his arrest was
> .233 grams per 100 milliliters of blood. See MCL 257.625(1).
>
> While the evidence did not establish that defendant *must* have been intoxicated at
> the time of operation, viewing the evidence in the light most favorable to the
> prosecutor, a rational trier of fact could find that the essential elements of MCL
> 257.625(1)(a) were established beyond a reasonable doubt. *Reese*, 491 Mich. at
> 139; *Nowack*, 462 Mich. at 399. Defendant could have asserted that he engaged in
> binge drinking after driving while in his apartment and was not intoxicated during
> the actual operation of the vehicle; the expert testimony falls short of indicating that
> defendant could only have reached such a high blood alcohol level over the course
> of a certain time period. Actual testimony, however, indicated defendant's
> intoxication while he was operating his vehicle in the apartment parking lot, and
> viewing all of the evidence as a whole, a rational trier of fact could conclude that
> defendant was intoxicated while operating his vehicle.
>
> There was testimony that when he first got out of his vehicle, defendant "walked in
> a full circle to get to the mailbox," "didn't seem like he could find his way back to
> the vehicle . . . very easily" and was not walking in a straight line. Testimony
> further indicated that police arrived within minutes of the 911 call. Thus, the jury
> could have found beyond a reasonable doubt that defendant was in fact intoxicated

while he was driving based on eyewitness testimony, the expert testimony indicating defendant's blood alcohol level, and Newton's testimony. Any doubt that could be attributed to lay witness's ability to discern intoxication was negated by the fact that it was subsequently determined that defendant was extremely intoxicated.

*Osborne*, 2018 WL 2422336, at *4.

Jackson makes clear that it is the jury's province to draw reasonable inferences from the evidence, but it does not define "reasonable inference." In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Certainly, the inference identified by the court of appeals—that Petitioner was intoxicated when he was driving in the parking lot—could rationally flow from the underlying facts. The inference is not compelled by those facts. The inference may not even be more likely than not. It is simply rational. *Id*. at 656. To succeed in his challenge, Petitioner must show that the identified inference is irrational. Or, in the parlance of federal habeas review, he must show that the state court's determination that the inference is reasonable is contrary to, or an unreasonable application of, *Coleman*.

He has not made that showing. His showing that other inferences might follow from the evidence—inferences that favor him—is immaterial. He has not identified any United States Supreme Court case that resolves the issue differently on a set of materially indistinguishable facts. Accordingly, Petitioner is not entitled to habeas relief on his OWI conviction based on insufficiency of the evidence.

## V. Sufficiency of the Evidence Regarding Resisting and Obstructing

Petitioner was accused of resisting Deputy Newton during the arrest at Petitioner's apartment complex and then resisting the EMT during the blood draw. Petitioner's challenge to the sufficiency of the "resisting and obstructing" evidence is premised on his argument that he was

entitled to resist an unlawful arrest or an unlawful search. Petitioner argues that the arrest was unlawful because Deputy Newton did not have probable cause to believe that Petitioner had operated his vehicle while intoxicated. The search was unlawful, Petitioner claims, because there was no probable cause for the search warrant.

Petitioner's arguments are frivolous. With the exception of the blood alcohol test results, Deputy Newton and the magistrate who issued the search warrant were privy to all the evidence—particularly the observations of the complaining witness and Deputy Newton—that supported the reasonable inference that Petitioner operated his vehicle while intoxicated. The reasonableness of that inference likewise supports the existence of probable cause to arrest Petitioner and draw his blood. Therefore, the court of appeals conclusion that there was sufficient evidence that Petitioner's arrest (and the subsequent blood draw) were lawful is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## VI. Proportionate Sentences

Petitioner contends that his minimum sentence was unreasonable, disproportionate, an unlawful departure from Michigan's sentencing guideline minimum range, and impermissibly based upon "judge found" facts. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).

The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Moreover, it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. "'[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Richey*, 546 U.S. at 76). Thus, this Court is bound by the state court's conclusion that the trial court properly applied the Michigan sentencing guidelines in scoring each of the offense and prior record variables.

To the extent Petitioner intends to suggest that the resulting sentences were disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990) or unreasonable under *People v. Lockridge*, 870 N.W.2d 502 (2015), he fails to raise a cognizable habeas claim.[1] In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666

---

[1] "Reasonableness" as contemplated by *Lockridge* is determined by inquiring whether the sentence is proportional under *Milbourn*. *People v. Steanhouse*, 902 N.W.2d 327, 329 (Mich. 2017).

N.W.2d 231, 236 (Mich. 2003). It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, any claim regarding proportionality based on *Milbourn* (or reasonableness based on *Lockridge*) is not cognizable in a habeas corpus action.

In addition, any claim that Petitioner's sentence was disproportionate under the Eighth Amendment is without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does

not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Petitioner also attacks the scoring of the sentence guidelines variables because the court relied upon facts that were neither found by the jury nor admitted by Petitioner. This argument is based on a line of Supreme Court cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303). A year later, in *Booker*, 543 U.S. at 220, the Supreme Court applied the *Blakely* reasoning to the federal sentencing guidelines to conclude that the federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment.

Then, in *Alleyne*, 570 U.S. at 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. The Sixth Circuit has determined that "Michigan's sentencing regime [as it existed before *Lockridge*] violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).

The Michigan Supreme Court reached that same conclusion three years earlier in a 5-2 decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *Lockridge*, 870 N.W.2d at 506 (emphasis in original). Consequently, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy was to make the guidelines advisory only. *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

Petitioner was sentenced after *Lockridge*. The guidelines at that time were advisory, not mandatory. As the courts have recognized, purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481-82 (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)).

For all these reasons, Petitioner has failed to show that the state appellate court's determinations regarding the constitutionality of his sentence are contrary to, or an unreasonable

application of, clearly established federal law. Thus, he is not entitled to habeas relief on his sentence challenges.

### VII.    Ineffective Assistance of Trial Counsel

Plaintiff argues that his trial counsel rendered ineffective assistance when he counseled Petitioner to waive his preliminary examination to facilitate Petitioner's acceptance into a drug program, participated in critical pretrial proceedings without Petitioner's presence, and permitted the prosecutor to arraign Petitioner on March 16, 2016, without notice of the habitual offender sentence enhancement notice—the notice was provided a week later.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), to establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .").

The Michigan Court of Appeals applied the *Strickland* standard and rejected Petitioner's ineffective assistance claims:

> Defendant first claims that he received ineffective assistance of counsel when his trial attorney informed him during his preliminary examination that in order to be accepted into a sobriety assistance program, he was required to waive the preliminary examination and attend a meeting with the prosecutor. Next, defendant claims that he received ineffective assistance of counsel because his attorney held status conferences without defendant being present. Defendant fails, however, to advance any comprehendible allegations of objectively deficient performance on behalf of his initial trial counsel that are rooted in facts found in the record. Moreover, his allegations of prejudice are supported neither in fact nor law.

*Osborne*, 2018 WL 2422336, at *8.

Petitioner's failure to identify any prejudice, in the *Strickland* sense, resulting from the alleged ineffective assistance of counsel continues in this Court. Petitioner does not explain how the waiver of the preliminary examination, his absence at pretrial status conferences, or the one-week gap between his arraignment and notice of the sentence enhancement had any effect on the judgment.

There is no federal constitutional right to a preliminary hearing. *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). Moreover, "a conviction will not be vacated on the ground that

the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Petitioner offers nothing—except his failed "probable cause" arguments above—to suggest that a preliminary examination would have changed the result.

A defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (internal citations and quotation marks omitted). In other words, Petitioner's "right to be present at every stage of the trial is not absolute, but exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (quoting *Stincer*, 482 U.S. at 745). Petitioner does not say that he "could have done anything had he been at the hearing [or that he] would he have gained anything by attending." *Stincer*, 482 U.S. at 747 (original brackets omitted) (quoting *United States v. Gagnon*, 470 U.S. 522, 527 (1985)). Accordingly, he has not shown prejudice.

Finally, a one-week gap between arraignment and notice of the prosecutor's intent to seek an enhanced sentence because of Petitioner's habitual offender status is entirely consistent with the timing requirements of the Michigan statutes and court rules. *See* Mich. Comp. Laws § 769.13; Mich. Ct. R. 6.112(F). Thus, counsel did not permit the delay in the sentence-enhancement notice, the Michigan legislature did. Moreover, notice serves a specific purpose: "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). In that regard, the notice of prior convictions required for a sentence enhancement under Mich. Comp. Laws § 769.13 would have simply echoed the notice of prior convictions required for the sentence enhancement under Mich. Comp. Laws § 257.625. Put differently, the arraignment would have informed Petitioner of

the prior convictions because he was charged for OWI-3rd offense; thus, it was based on his many prior felonies involving driving and alcohol, just as the habitual offender sentence enhancement was. Either way, Petitioner had ample notice to permit him to challenge the enhancements. Thus, again, Petitioner has not shown any prejudice.

Petitioner has failed to show that the state appellate court's rejection of Petitioner's ineffective assistance of counsel claims is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to habeas relief.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when

habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated:   August 12, 2019                        /s/ Janet T. Neff
                                                Janet T. Neff
                                                United States District Judge